UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | MAG. NO. C-09-1037 |
| | § | |
| BRUCE CARTER MATZKE | § | |

## FINDINGS OF FACT AND MEMORANDUM OPINION

Defendant was charged by criminal information with the crime of driving a vehicle within the Padre Island National Seashore while under the influence of alcohol or drugs to a degree that rendered him incapable of the safe operation of a motor vehicle (D.E. 1). He pleaded not guilty and a bench trial was held on February 16, February 22, and March 15, 2010. The Court finds the defendant guilty.

On September 7, 2010, at about 9:00 p.m., Padre Island National Seashore Park Ranger Tyler Hudock was on patrol within the park boundary when he noticed a sport utility vehicle traveling in front of him. Ranger Hudock observed that while the vehicle was negotiating a curve, all four wheels moved into the oncoming lane of traffic for at least five seconds. The vehicle corrected, and Ranger Hudock activated his emergency lights and requested back up. The vehicle did not stop until Ranger Hudock blew his air horn. The vehicle stopped with two of its tires still in the lane of traffic. The driver and owner of the of the car, later identified as defendant Matzke, stepped out of the vehicle. When he was told by Officer Hudock to get back into the car, the defendant began to brush his hair. Officer Hudock had to ask defendant a second time to get back into his car.

Hudock approached the vehicle. He smelled an odor of alcohol. He asked defendant if he had been drinking, and the defendant denied having had anything to drink. Officer Hudock, trained to administer field sobriety tests, asked defendant to perform a series of field sobriety tests.[1] The defendant denied that he had any physical problems which would have impaired his ability to perform the tests.

Officer Hudock explained the walk and turn test to the defendant and then demonstrated the test. While Hudock was giving the defendant instructions, defendant three times lost his balance. Prior to finishing the instructions, the defendant began the test even though he had been instructed to wait until the officer had finished giving instructions and demonstrating the test. The defendant was supposed to take nine small heel-to-toe steps, but none of the steps was heel to toe as instructed. The defendant used his arms for balance, raising them three to six inches for the entire test instead of keeping them at his side as he had been instructed. Additionally the defendant failed to follow the instructions regarding the turn as he failed to take a series of small steps to make his turn. As the defendant was taking his nine return steps, he faltered and stepped off the line for the fifth step.

On the one leg stand test, the defendant was told he needed to stand on his right leg and raise his left leg six inches off the ground, look at his foot, and hold it for thirty seconds with his arms at his side. Hudock also demonstrated the test. The defendant swayed during this test, used his arms for balance, and put his foot down. He was unable

---

[1] The results of the Horizontal Gaze Nystagmus (HGN) test are not considered because of the lack of any scientific evidence that the test is a reliable indicator of intoxication. As to the one-leg stand and walk-and-turn test, Officer Hudock was trained to observe the defendant's performance on these tests, and scientific evidence is not required for a law enforcement officer to testify about his observations of the defendant's coordination.

to hold the position for thirty seconds.  Officer Hudock informed the defendant that he had shown significant signs of intoxication, and the defendant admitted that he had had three drinks earlier.  Officer Hudock concluded that the defendant was intoxicated and incapable of the safe operation of a vehicle and placed him under arrest.

The defendant's vehicle was searched.  An empty flask which smelled of alcohol was discovered, as was an empty fifth bottle of peppermint schnapps which also smelled of alcohol.  The flask was in the front compartment of the car and the bottle was in the rear compartment.  Two containers of prescription pills were also found.  Both prescriptions were in the defendant's name, and both advised against taking the pills with alcohol.  Another prescription vial in someone else's name was found hidden underneath the center console.

Based upon the presence of vials of prescription drugs, Officer Hudock determined that he should request a blood sample instead of a breath sample because a blood test would detect the presence of substances other than alcohol.

The defendant was transported to the hospital, and after being given his statutory warnings, he refused to submit a sample of his blood for testing.

At trial the defendant's wife testified that she had been with the defendant all day and that he had not had anything to drink except for a sip of the drink belonging to one of their companions.  She did not observe the administration of the field sobriety tests.

The defendant testified, stating that he had not been drinking on the day he was arrested.  He admitted driving into the oncoming lane of traffic when he was steering the

car with his knee while trying to brush his hair.  Defendant also explained that he had been unable to perform on the physical sobriety tests because he had arthritis in his hip.

The testimony of the defendant and his wife about whether he had been drinking is not credible because the defendant smelled of alcohol, empty alcohol containers were found, and the defendant admitted to Officer Hudock that he had had three drinks.  The testimony from the defendant that his arthritis affected his performance on the field sobriety tests was controverted by the testimony of Officer Hudock that the defendant denied he had any physical problems which would affect his performance on the field sobriety tests.

In order to convict the defendant of the offense of driving under the influence, the government must prove beyond a reasonable doubt that the defendant was operating a vehicle within the boundaries of the Padre Island National Seashore while under the influence of alcohol or drugs or a combination of alcohol and drugs to a degree that rendered him incapable of the safe operation of a motor vehicle.  16 U.S.C. § 3; 36 CFR §4.23(a).  The government has met its burden of proof.  It is uncontroverted that the defendant was driving a vehicle within the National Seashore boundaries and that federal criminal jurisdiction is present.  The defendant smelled of alcohol and could not maintain his balance or follow directions when he performed the physical sobriety tests.  His driving was affected because he moved out of his lane into the oncoming lane of travel and could have caused a serious accident had there been oncoming traffic.  Moreover, the defendant admitted to consuming three drinks and his judgment was obviously affected by what he'd had to drink.  September 7 was Labor Day and a busy day on the National

Seashore. The defendant chose to brush his hair while steering the vehicle through a curve with his knee. In addition, after being instructed to get back into his car, the defendant instead brushed his hair with the car door open and exposed to oncoming traffic. Finally, the defendant, a lawyer who obviously understood the implications of refusing to submit to a blood test, chose not to submit to a blood test. His refusal is admissible in this judicial proceeding. 36 CFR 4.23(c)(2). The government has met its burden of proving the charge beyond a reasonable doubt.

    ORDERED this 26th day of March, 2010.

                                            _____
                                            B. JANICE ELLINGTON
                                            UNITED STATES MAGISTRATE JUDGE